**No. 25-12553**

# In the United States Court of Appeals for the Eleventh Circuit

THE LIBERTARIAN PARTY OF GEORGIA, INC., ET AL.,
*Plaintiff-Appellants,*
v.

ATTORNEY GENERAL, STATE OF GEORGIA, ET AL.,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:24-cv-05763 (Cohen, J.)

**Brief of Appellees Attorney General and James D. Kreyenbuhl**

David B. Dove
Harold D. Melton
Elizabeth P. Waldbeser

TROUTMAN PEPPER LOCKE, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
david.dove@troutman.com
harold.melton@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Defendant-Appellees*
*the Attorney General, State of Georgia, and James D. Kreyenbuhl*

# CERTIFICATE OF INTERESTED PERSONS

**No. 25-12553, *Libertarian Party of Georgia, et al. v. Attorney General, State of Georgia, et al.***

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1. Carr, Christopher M., in his official capacity as Attorney General of Georgia
2. Cohen, Mark H., Hon.
3. Dove, David B.
4. Georgia Green Party
5. Kreyenbuhl, James D., in his official capacity as Chair of the State Ethics Commission
6. Libertarian Party of Georgia, Inc.
7. Melton, Harold D.
8. Sells, Bryan L.
9. State Ethics Commission
10. The Law Office of Bryan L. Sells, LLC
11. Troutman Pepper Locke, LLP
12. Waldbeser, Elizabeth P.
13. Young, Elizabeth T.

[*signature on following page*]

March 23, 2026

s/ *David B. Dove*
David B. Dove

*Counsel for Defendant-Appellees the Attorney General, State of Georgia, and James D. Kreyenbuhl*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument in this case. The legal issues before the Court in this appeal are straightforward and adequately presented in the briefs. Oral argument would not significantly aid the decision-making process.

## TABLE OF CONTENTS


Certificate of Interested Persons ........................................................... i

Statement Regarding Oral Argument ....................................................... i

Introduction ........................................................................................ 1

Statement of Issues ............................................................................. 2

Statement of the Case .......................................................................... 2

A. Georgia's campaign-finance laws ................................................ 2

B. The present litigation .................................................................. 4

C. Standard of review. ..................................................................... 6

Summary of Argument ......................................................................... 7

Argument ............................................................................................. 8

I. The political bodies' claims are not ripe for judicial intervention. ........................................................................................ 8

II. The political bodies lack standing to assert their claims. ............ 13

A. The political bodies have not alleged an organizational injury because their nominees are entitled to a leadership committee under Regulation 189-8-.01. ............ 13

B. The political bodies also lack standing for the reasons enumerated in the district court's order. .............................. 17

1. The political bodies cannot demonstrate an actual or imminent injury. ................................................... 17

2. The political bodies cannot satisfy the requirement of traceability. ........................................ 24

3. The political bodies cannot satisfy the requirement of redressability. .................................... 25

Conclusion .......................................................................................... 25

Certificate of Compliance ................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Alliance for Equal Rights v. Fearless Fund Mgmt, LLC*,
103 F.4th 765 (11th Cir. 2024) .................... 21, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 13, 14, 16

*Beaulieu v. City of Alabaster*,
454 F.3d 1219 (11th Cir. 2005) .................... 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................... 18, 21, 25

*Davis v. FEC*,
554 U.S. 724 (2008) .................... 20

*Digital Props., Inc. v. City of Plantation*,
121 F.3d 586 (11th Cir. 1997) .................... 10

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) .................... 22, 23

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006) .................... 8

*Friends of the Earth, Inc. v. Laidlaw*,
528 U.S. 167 (2000) .................... 22, 23

*Graham v. Attorney General*,
110 F.4th 1239 (2024) .................... 25

*Jacobson v. Fla. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) .................... 21, 24

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 13, 17, 18, 19

*Malak v. Comm'r of Social Security*,
131 F.4th 1280 (11th Cir. 2025) .......... 21

*Maron v. Chief Fin. Officer of Fla.*,
136 F.4th 1322 (11th Cir. 2025) .......... 8, 9, 12

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .......... 1, 13, 18

*N. Carolina v. Rice*,
404 U.S. 244, 246 (1971) (per curiam) .......... 17

*Perdue v. Kemp*,
584 F. Supp. 3d 1310 (N.D. Ga. 2022) .......... 20

*S. Grande View Dev. Co., Inc. v. City of Alabaster, Ala.*,
1 F.4th 1299 (11th Cir. 2021) .......... 8

*Santos v. Healthcare Revenue Recovery Grp., LLC.*,
90 F.4th 1144 (11th Cir. 2024) .......... 6

*Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*,
727 F.3d 1349 (11th Cir. 2013) .......... 6, 9

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) .......... 13, 16

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1

*United States v. Rivera*,
613 F.3d 1046 (11th Cir. 2010) .......... 9

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .......... *passim*

**Statutes**

O.C.G.A. § 21-2-2(23) .......... 3, 5

O.C.G.A. § 21-2-110 .......... 3, 11, 14, 15

O.C.G.A. § 21-2-180 .......... 3, 11, 15

O.C.G.A. § 21-5-1 .......... 2

O.C.G.A. § 21-5-34.2(a) .......... 2, 3, 4, 15

O.C.G.A. § 21-5-34.2(a) .......... 14

O.C.G.A. § 21-5-34.2(d) .......... 4

O.C.G.A. § 21-5-41(a) .......... 2

O.C.G.A. § 21-5-41(k) .......... 2

O.C.G.A. § 50-30-11 .......... 10

**Other Authorities**

*Contribution Limits*, Ga. Gov't Transparency & Campaign Fin. Comm'n, https://ethics.ga.gov/contribution-limits (last visited Aug. 19, 2025) .......... 2

Ga. Comp. R. & Regs. 189-8-.01 .......... 3, 11, 14, 15

U.S. Const. art. III, § 2 .......... 13

# INTRODUCTION

The Libertarian and Green Parties, the "political bodies," cannot satisfy Article III to the U.S. Constitution's requirement of a case or controversy. The political bodies allege that they plan to nominate unnamed candidates in future elections for Governor and Lieutenant Governor, that those unnamed candidates would like to form leadership committees, and that unnamed Libertarian donors would like to contribute to unnamed Libertarian candidates in future elections in excess of current legal caps for campaign committees. The district court rightly rejected these harms as entirely hypothetical, and even a cursory review of the political bodies' principal brief is enough to show they are meritless.

The existence of a case or controversy is a "bedrock requirement" of federal courts' jurisdiction. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). And asking a federal court to weigh in on an entirely hypothetical dispute seeks to bypass this requirement. "Federal courts do not issue advisory opinions," *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021), yet that is exactly what the political

bodies asked the district court to do below and now ask this Court to do on appeal. The Court should affirm the district court's dismissal.

## STATEMENT OF ISSUES

1. Whether the political bodies' case is ripe for this Court's consideration; and
2. Whether the political bodies have alleged an injury-in-fact.

## STATEMENT OF THE CASE

### A. Georgia's campaign-finance laws.

Georgia's Government Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1, *et seq.*, imposes limits on campaign contributions to candidates for statewide office. Adjusted for inflation, a person, corporation, political party, or political committee may give no more than $8,400 for a primary election, $8,400 for a general election, and $4,800 for a runoff election. O.C.G.A. §§ 21-5-41(a), (k); *see also Contribution Limits*, Ga. Gov't Transparency & Campaign Fin. Comm'n, https://ethics.ga.gov/contribution-limits (last visited Aug. 19, 2025).

In 2021, however, the General Assembly amended the Act to authorize the formation of "leadership committee[s]." O.C.G.A. § 21-5-34.2(a). These committees may be "chaired by the Governor, the Lieutenant Governor," or "the nominee of a political party" for Governor

or Lieutenant Governor who is "selected in a primary election in the year in which he or she is nominated." *Id.*

By rule, the term "political party" includes "any political body which is duly registered" under Section 21-2-110 and "qualified to nominate candidates . . . by convention" under Section 21-2-180. Ga. Comp. R. & Regs. 189-8-.01 (adopted Feb. 5, 2024). A "political body" is "any political organization other than a political party." O.C.G.A. § 21-2-2(23). Section 21-2-110 requires any political body operating within Georgia to register with the Secretary of State's Office. *Id.* § 21-2-110(a). Section 21-2-180 allows a political body to nominate candidates for statewide office by convention if it satisfies one of two conditions: (1) filing a petition with a number of signatories equal to one percent of the registered voters who were registered and eligible to vote in the preceding general election, *id.* § 21-2-180(1), or (2) nominating a candidate for state-wide office in the preceding general election, which candidate received a number of votes equal to one percent of the total number of registered and eligible voters for that general election, *id.* § 21-2-180(2).

To sum up: Regulation 189-8-.01 allows the nominees for political bodies who participate in general elections for governor or lieutenant

governor to obtain leadership committees if their nominating political body registers with the Secretary of State and either ran a candidate for state-wide office in the general election who received one percent of the popular vote or the political body files a petition signed by a number of voters equal in number to one percent of registered, eligible voters in the preceding primary.

Leadership committees may raise and spend funds to "affect[] the outcome of any election," "advocat[e] for the election or defeat of any candidate," and "defray ordinary and necessary expenses" incurred by a public officer's fulfillment or retention of office. O.C.G.A. § 21-5-34.2(d). Once a leadership committee receives or spends more than $500, it must register with the State Ethics Commission and periodically disclose its contributions and expenditures. *Id.* § 21-5-34.2(e). Notably, the statutory contribution limits in Section 21-5-41 do not restrict the amount that leadership committees may accept or expend in support of a candidate or group of candidates. *Id.*

**B. The present litigation.**

Plaintiff-Appellants, the Libertarian Party of Georgia and the Georgia Green Party, brought this action against the Attorney General

of Georgia and James Kreyenbuhl, the Chair of the Commission. They allege that Sections 21-5-41 and 21-5-34.2 violate their free-speech rights under the First and Fourteenth Amendments. Doc. 1 at 1, 9–11; Doc. 18 at 1, 10–12. Both the Libertarian Party and Georgia Green Party are political bodies under Section 21-2-2(23), but the record shows that only the Green Party is registered as a political body in Georgia. Doc. 18 at 3, 7; *see also* Appellant's Br. at 15.

Appellants filed their First Amended Complaint, claiming that they each "*intend*[] to nominate candidates for Governor and Lieutenant Governor in 2026 and in future elections," *id.* at 2–3 (emphasis added), that those nominees "would create leadership committees if the law permitted them to do so," *id.* at 3–4, and that the leadership-committee statutory scheme creates an "unlevel playing field" that impairs their ability to recruit strong candidates, *id.* at 3–4. The Libertarian Party further alleged that it had members who "want to donate" amounts "above the contribution limits in [Section] 21-5-41 or make expenditures above those limits in coordination with the candidate or that candidate's campaign committee." *Id.* at 3.

Yet, the political bodies do not plead that they are actually qualified to nominate candidates for statewide public office—just that they "intend" to. *See generally* Doc. 18. Nor do they plead that either body (1) had a candidate for state-wide office in the general election who received one percent of the popular vote or (2) filed a petition signed by a number of voters equal in number to one percent of registered, eligible voters in the preceding primary. *See generally id.*

The District Court dismissed the First Amended Complaint for lack of standing, holding that the political bodies' alleged intentions and donor interests were "conjectural" and "insufficiently concrete to satisfy the injury in fact standard," doc. 28 at 22 (citation omitted); *see also id.* at 27–29, and that any purported harm was "not traceable to any action by" Defendants, *id.* at 30. This appeal followed.

**C. Standard of review.**

The ripeness of a claim for judicial review is a legal question this Court reviews de novo. *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1356 (11th Cir. 2013) (citation omitted). Whether a plaintiff has standing to sue is a "threshold jurisdictional question" that the Court reviews de novo. *Santos v. Healthcare Revenue*

*Recovery Grp., LLC.*, 90 F.4th 1144, 1150 (11th Cir. 2024) (quotation omitted).

## SUMMARY OF ARGUMENT

The district court correctly held that the political bodies have not alleged a case or controversy that satisfies Article III because their claims are not ripe and they lack standing.

The political bodies' claims are independently dismissible because they are not ripe for adjudication. Rather than sue the Attorney General in the first instance, the political bodies could have sought, but failed to seek, a conclusive response from the relevant governmental entity (the Ethics Commission) regarding the applicability of Sections 21-5-41 and 21-5-34.2. Moreover, the political bodies have utterly failed to identify what prevents them from obtaining leadership committees for their nominees when they have a clear path to obtaining them through Regulation 189-8-.01, which allows political body nominees to obtain leadership committees.

The political bodies' claims are also dismissible because they lack standing to assert them. First, they fail to "clearly and specifically set forth facts," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), showing an

organizational injury, i.e. that their nominees cannot qualify for leadership committees under Regulation 189-8-.01. Second, as the district court held, the political bodies do not have associational standing to sue on behalf of their members. They cannot identify a single person by name or even pseudonym who can support the reality of their hypothetical harms. Nor can they cite any empirical evidence supporting these alleged harms.

## ARGUMENT

### I. The political bodies' claims are not ripe for judicial intervention.

Ripeness "presents the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006); *S. Grande View Dev. Co., Inc. v. City of Alabaster, Ala.*, 1 F.4th 1299, 1305 (11th Cir. 2021) (quotation and punctuation omitted). It prevents courts from "engaging in speculation or wasting [their] resources through the review of potential or abstract disputes." *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1332 (11th Cir. 2025) (citation omitted). Therefore, a claim is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (internal marks omitted).

To decide whether a claim is ripe for adjudication, courts examine two primary considerations: "1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Temple B'Nai Zion, Inc.*, 727 F.3d at 1356 (citing *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1224 (11th Cir. 2004)). The fitness prong concerns questions of "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed," *Maron*, 136 F.4th at 1332 (citation omitted), while the hardship prong "asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal," *id*. (quotation omitted).

In the context of First Amendment rights, the ripeness requirement applies "loosely," but courts "may not disregard it altogether[.]" *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1228 (11th Cir. 2005) (quotation omitted). Courts still must ensure that a case is in a proper state for judicial resolution. And, even if a plaintiff thinks that a statute or regulation will prohibit her from engaging in her desired conduct, she

still has an "obligation to obtain a conclusive response from someone with the knowledge and authority to speak" for the relevant governmental entity regarding the applicability of the statute or regulation to the plaintiff. *Id*. (quoting *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997)).

Here, the political bodies have raced to court seeking a declaratory judgment without ever attempting to obtain a "conclusive response," *Digital Props.*, 121 F.3d at 590, from anyone at the Ethics Commission, the applicable regulatory entity, about whether they are able to apply for leadership committees for their candidates. The Georgia Administrative Procedure Act provides a mechanism for parties to seek a "prompt disposition of petitions for declaratory rules as to the applicability of any statutory provision or of any rule or order of the agency[.]" O.C.G.A. § 50-30-11. Accordingly, the political bodies could have obtained a swift response from the Ethics Commission explaining whether they were entitled to leadership committees for their nominees.

Based on the face of Regulation 189-8-.01, the political bodies' nominees are entitled to leadership committees if they satisfy certain threshold criteria. For purposes of the leadership committee statute,

Regulation 189-8-.01 defines "political party" to include not only the two major parties but also "any political body which is duly registered as provided in O.C.G.A. § 21-2-110 and qualified to nominate candidates for state-wide public office by convention pursuant to O.C.G.A. § 21-2-180." Ga. Comp. R. & Regs. 189-8-.01. So, if the political bodies are registered with the Secretary of State's office and either (1) ran a candidate who received at least one percent of the popular vote in the last gubernatorial election or (2) submitted a petition with signatures from a number of voters equal to one percent of the registered, eligible voters in the last gubernatorial primary, their candidates are entitled to leadership committees.

The political bodies pointedly failed to address the applicability of Regulation 189-8-.01 in their First Amended Complaint. They did plead that both the Libertarian Party and the Green Party are recognized political bodies, Doc. 18 at 7, that the Green Party is duly registered with the Secretary of State, Doc 18 at 3, and that they "intend" to nominate candidates for statewide office by convention, O.C.G.A. §§ 21-2-110, 21-2-180. The First Amended Complaint contains no allegations that the political bodies have received any kind of final decision to the contrary

from the Ethics Commission, stating only that if they applied, their applications would be denied. Doc. 18 at 9. In short, they failed to sufficiently allege that they are prohibited from forming leadership committees, and they certainly have done nothing to obtain verification that they cannot.

In this context, examination of the two prongs yields a clear result: the political bodies' claims are not ripe for judicial review. The issues they raise are not fit for judicial decision because there is no "final decision" from the Ethics Commission and there are facts that require further development before a court can properly gauge whether an injury exists, namely, what prevents the political bodies from obtaining leadership committees for their nominees when they have a clear path to obtaining them. *Maron*, 136 F.4th at 1332. Given this level of uncertainty, there cannot be a hardship to the political bodies in delaying review until "conditions for deciding the controversy are ideal," *Maron*, 136 F.4th at 1332, or until the political bodies have either a decision from the Ethics Commission saying it would deny the political bodies' applicants a leadership committee or the applicants have unsuccessfully sought a leadership committee.

## II. The political bodies lack standing to assert their claims.

### A. The political bodies have not alleged an organizational injury because their nominees are entitled to a leadership committee under Regulation 189-8-.01.

Article III of the Constitution limits federal courts' review to "Cases" or "Controversies." U.S. Const. art. III, § 2. A case or controversy exists when a plaintiff has standing to bring a lawsuit, or, when a plaintiff has alleged it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In other words, "the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky*, 979 F.3d at 924.

For standing purposes, an injury-in-fact is an invasion of a legally protected interest that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation omitted). At the pleading stage, "general factual allegations of injury," can suffice, but those general factual allegations must still "plausibly and clearly allege a concrete injury." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "[M]ere

conclusory statements do not suffice," *Iqbal*, 556 U.S. at 678 (punctuation omitted), and plaintiffs "must clearly and specifically set forth facts" to satisfy the requirements of Article III at the pleading stage. *Whitmore*, 495 U.S. at 155 (1990).

The political bodies are unable to establish Article III standing because they did not "clearly and specifically set forth facts," *id.*, showing that their nominees are not entitled to leadership committees under Regulation 189-8-.01. In their First Amended Complaint, the political bodies asserted that their nominees were disadvantaged by being excluded from the leadership-committee regime, making it more difficult for the political bodies to attract and run candidates. Doc. 18 at 3–4. But Georgia law expressly provides the political bodies' nominees the same entitlement to leadership committees as the nominees of the Republican and Democratic parties. *See* O.C.G.A. § 21-5-34.2(a); Ga. Comp. R. & Regs. 189-8-.01.

Regulation 189-8-.01 clarifies that, for purposes of the leadership committee statute, a "political party" includes not only the two major parties but also "any political body which is duly registered as provided in O.C.G.A. § 21-2-110 and qualified to nominate candidates for state-

wide public office by convention pursuant to O.C.G.A. § 21-2-180." Ga. Comp. R. & Regs. 189-8-.01. Thus, as long as the political bodies are registered with the Secretary of State's office and either (1) ran a candidate who received at least one percent of the popular vote in the last gubernatorial election or (2) submitted a petition with signatures from a number of voters equal to one percent of the registered, eligible voters in the last gubernatorial primary, their candidates are entitled to leadership committees.

Per their First Amended Complaint, the Georgia Green Party is a recognized political body under the leadership-committee regulation. Doc. 18 at 3. As such, it is duly registered with the Secretary of State and, at least, implies that it is authorized to nominate candidates for statewide office by convention. *Id.*; *see* O.C.G.A. §§ 21-2-110, 21-2-180. Consequently, once the Green Party nominates a candidate for Governor or Lieutenant Governor, that nominee stands on equal footing with the Republican and Democratic nominees: she will be entitled to form a leadership committee, accept contributions without regard to the statutory limits in Section 21-5-41, and make expenditures in support of her campaign. O.C.G.A. § 21-5-34.2(a).

Noticeably absent from the First Amended Complaint, however, is any mention of the Libertarian Party's registration with the Secretary of State. *See generally* Doc. 18. Also absent are any facts suggesting that either body (1) had a candidate for state-wide office in the general election who received one percent of the popular vote or (2) filed a petition signed by a number of voters equal in number to one percent of registered, eligible voters in the preceding primary. Without clarity on these facts, the political bodies cannot possibly satisfy the requirements of Article III at the pleading stage. *See Whitmore*, 495 U.S. at 155.

The political bodies referred to Regulation 189-8-.01 in their First Amended Complaint, doc. 18 at 8, but offered no specific allegations as to why their nominees could not obtain leadership committees under the regulation. Instead, they plead only, at the highest level of abstraction, that the Commission "would reject or refuse to process a registration form . . . for a leadership committee submitted by a political-body nominee for Governor or Lieutenant Governor." *Id.* at 9. This "general factual allegation[]" does not "plausibly and clearly allege a concrete injury," *Thole*, 590 U.S. at 538, nor does it satisfy *Iqbal* and *Twombly*. It is the epitome of a "mere conclusory statement," *Iqbal*, 556 U.S. at 678, as it

does not explain why the political bodies' nominees' applications would be denied when, on the face of Regulation 189-8-.01, the Commission should accept them. The political bodies have not "clearly and specifically set forth facts" showing that they have an injury, *Whitmore*, 495 U.S. at 155, and consequently, they have not alleged an "actual" harm that is "concrete and particularized." *See Lujan*, 504 U.S. at 560. Instead, the political bodies ask this Court to "decide questions that cannot affect the rights of litigants in the case before [it]," which it is "without power" to do. *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam).

### B. The political bodies also lack standing for the reasons enumerated in the district court's order.

Even if the Court finds that this case is ripe for judicial review and that the political bodies are not entitled to leadership committees under existing law, the political bodies still lack standing. The political bodies lack standing because they do not have an injury—their alleged harms are purely hypothetical.

#### 1. The political bodies cannot demonstrate an actual or imminent injury.

An injury must "be actual or imminent, rather than conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore*, 495 U.S.

at 158 (citations omitted). Nor does "a highly attenuated chain of possibilities[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Rather, a litigant must have a "description of concrete plans," *Lujan*, 504 U.S. at 564, and cannot rely on a generalized future intent to engage in conduct. "Concrete" means "real." *Muransky*, 979 F.3d at 925 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). In other words, even allegations of future injury must involve imminent and "real," or "actual," harms.

Here, the political bodies alleged that the Leadership Committee statute has harmed (1) their candidate-recruitment efforts; (2) their Governor and Lieutenant Governor nominees' campaign finance schemes; and (3) Libertarian party member donations that could exceed the contribution limits. *See* Appellants' Br. at 29–30; *see also* Doc. 18 at 3–4. These alleged injuries, however, rely solely on hypotheticals and conjecture.

Specifically, the political bodies have yet to identify, by name or pseudonym, a single person who can give credence to these enumerated harms. First, they fail to identify a potential candidate who they could have recruited but for the Leadership Committee Statute in conjunction

with their first enumerated harm. Then, the political bodies fail to identify a nominee unable to raise or spend money on par with his opponent in conjunction with their second enumerated harm. Finally, the political bodies fail to identify a donor that would give money in excess of the contribution limit in conjunction with their third enumerated harm. Without doing so, the political bodies cannot identify a concrete injury. Accordingly, the district court properly held that the political bodies "do not allege any actual, imminent, concrete, and particularized harm imposed by the [Leadership Committee Statute] that is not speculative." Doc. 28 at 24. Further, the political bodies fail to show how any binding precedent requires a reversal of this case, as they have not established the essential element of an injury.

All three of the political bodies' asserted injuries suffer from the same basic flaw: they are "conjectural" rather than "actual." *Lujan*, 504 U.S. at 560. The political bodies argue that "Georgia's unequal campaign finance scheme hurts the parties' candidate recruitment efforts," and "hurts their nominees for Governor and Lieutenant Governor, who cannot raise and spend money in unlimited amounts like their Democratic and Republican counterparts." Appellants' Br. at 29–30.

They also argue that the Libertarian Party "has members who want to donate to individual Libertarian candidates above the contribution limits." *Id.* at 30. Yet, the political bodies cannot identify a single person by name or even a pseudonym that can support the reality of these hypothetical harms. Nor can they cite any empirical evidence such as political engagement studies or past campaign finances. These hypotheticals of possible future injury cannot satisfy Article III's mandatory concrete harm. *See Whitmore*, 495 U.S. at 158 (citations omitted).

While it is true that unequal campaign finance schemes can confer standing, as they did in *Davis v. FEC*, 554 U.S. 724, 729 (2008), and *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1319 (N.D. Ga. 2022), those cases "involved identified candidates who were actually running in contested elections against named candidates." Doc. 28 at 21. In contrast, here, the political bodies merely intend to nominate unnamed candidates in future elections who would create leadership committees if the law permitted them to do so. Appellant's Br. at 20 (citing Doc. 18 at 3). The political bodies identify no candidates or opponents with leadership committees (or some sort of different contribution limit), as the plaintiffs did in

*Perdue* and *Davis*. Doc. 28 at 22. Rather, their proposed injury rests on a string of "ifs"—*if* they nominate a candidate for Governor or Lieutenant Governor and *if* those candidates face an opponent with a leadership committee operating to the candidates' detriment, only then would they have a member facing an unequal campaign finance scheme upon which they could premise their own associational standing. *Id*. Such a "highly attenuated chain of possibilities" does not satisfy Article III. *Clapper*, 568 U.S. at 410.

Without providing a meaningful response to this fatal underlying deficiency, the political bodies insist they have associational standing.[1] They argue that this Court's holding in *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir.

[1] The political bodies also quibble with the district court's reliance on *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) for apparently comingling "associational" and "organizational" standing, but that is a distinction without a difference because they do not explain how the parties as organizations have suffered a concrete injury-in-fact. *See* Appellant's Br. at 34. Reading their allegations below generously, at most, they pled that Georgia's unequal campaign finance scheme prevents them from attracting "high-quality candidates" for Governor and Lieutenant Governor. Doc. 18 at 3–4. But nowhere do the political bodies provide concrete facts showing that such harm has happened to them in the past, nor do they allege facts showing that it will happen again in the 2026 or other future elections. The political bodies also fault the district court for not discussing a Third Circuit case—which they do not properly cite or substantively discuss. Appellant's Br. at 34–35. But this Court "is not bound by decisions from other circuits," *Malak v. Comm'r of Social Security*, 131 F.4th 1280 (11th Cir. 2025), and neither is the district court.

2024), allows them to establish associational standing without identifying donors or candidates by name. Appellant's Br. at 32–33. But the political bodies misrepresent the applicability of that case. There, the Court held that Article III's concrete injury requirements allow an organization suing on behalf of its members to identify members by pseudonym instead of by name, provided the organization pleads pseudonymous members affected by the statute at issue. *Fearless Fund Mgmt*, 103 F.4th at 772–73. There, the organization had identified affected members by their pseudonyms; here, Appellants have not identified any impacted member by either a pseudonym or a real name. Such a failure is fatal to any claim of associational standing. *See Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 181 (2000) (an organization has "standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right.").

The political bodies similarly argue that this Court's holding in *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999), allows them to establish associational standing without identifying donors or candidates by name. *See* Appellant's Br. at 33. Again, the political bodies are misrepresenting precedent. While this Court in *Stincer* stated that a party suing as a

representative is not required to "specifically name the individual on whose behalf the suit is brought[,]" it did so with the caveat that the party still must "allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right." *Stincer*, 175 F.3d at 884–885; *see also Friends of the Earth*, 528 U.S. at 181. The political bodies also fail to mention that the organization in *Stincer* ultimately lacked standing. *Stincer*, 175 F.3d at 887. Despite the organization's identification of an unnamed individual suffering harm, this Court still held the organization lacked standing because the individual was not a member. *Id.* Here, the political bodies fail to even identify an unnamed individual (let alone a member) that would allow them to bring suit in their own right. The political bodies rely solely on theoretical people that *could* be recruited, or that *could* raise and spend money, or that *could* donate money above the contribution limit. In other words, the political bodies' conjecture surrounding hypothetical people who might suffer hypothetical injuries is insufficient to satisfy Article III's standing requirement.

**2. The political bodies cannot satisfy the requirement of traceability.**

The political bodies next turn to traceability, or the causation requirement of standing. To satisfy causation, a plaintiff's injury "must be fairly traceable to the challenged conduct of the defendant and not the result of some third party not before the court." *Jacobson*, 974 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560). The political bodies argue that their injuries and their members' injuries are traceable to the Attorney General and the Commission because they enforce the Act. *See* Appellant's Br. at 35. But the political bodies still do not explain why the Attorney General or the Commission would enforce statutes applicable to political candidates against either the Green Party or Libertarian Party. Thus, any injury to the political bodies would not be traceable to the Attorney General or the Commission. Doc. 28 at 30. As for the possible injuries to hypothetical candidates and members of the political bodies, the failure to plead specific injuries precludes any analysis of traceability to the Appellees when the political bodies have alleged no actual, imminent threats of enforcement of either statute against their members.

### 3. The political bodies cannot satisfy the requirement of redressability.

Finally, the political bodies offer half-hearted arguments that their alleged injuries are redressable by injunctions against the Appellees. *See* Appellant's Br. at 38–39. To establish redressability, a plaintiff must prove that there is a substantial likelihood that a favorable decision on the merits would redress its injuries. *See Clapper*, 568 U.S. at 410–14 (holding that it must be likely, not merely speculative, that a favorable decision will redress the injury). Here, the political bodies mention potential injunctions discussed at oral argument by the panel in *Graham v. Attorney General*, 110 F.4th 1239 (2024). But in that case, which was dismissed for mootness, an actual candidate alleged an actual injury from an unequal campaign contribution limit. *Id*. at 1240. In contrast, here, the Court cannot craft an injunction because there are no specific facts alleged on which it may base relief. In other words, it is impossible for a favorable decision to redress the political bodies' injury because there is no injury to redress.

## CONCLUSION

For the above reasons, this Court should affirm the district court's order dismissing the political bodies' claims.

Respectfully submitted this 23rd day of March, 2026.

s/ *David B. Dove*

David B. Dove
Harold D. Melton
Elizabeth P. Waldbeser

TROUTMAN PEPPER
LOCKE, LLP
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3000
david.dove@troutman.com
harold.melton@troutman.com
elizabeth.waldbeser@troutman.com

*Counsel for Defendant-Appellees the Attorney General, State of Georgia, and James D. Kreyenbuhl*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,047 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

March 23, 2026

s/ *David B. Dove*
David B. Dove

*Counsel for Defendant-Appellees the Attorney General, State of Georgia, and James D. Kreyenbuhl*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on March 23, 2026. I served all counsel of record by CM/ECF.

March 23, 2026

s/ *David B. Dove*
David B. Dove

*Counsel for Defendant-Appellees the Attorney General, State of Georgia, and James D. Kreyenbuhl*