**No. 25-12553**

In the
**United States Court of Appeals**
**For the Eleventh Circuit**

LIBERTARIAN PARTY OF GEORGIA, INC. et al.,

*Plaintiffs – Appellants*

v.

ATTORNEY GENERAL, STATE OF GEORGIA, et al.,

*Defendants – Appellees*

Appeal from the United States District Court
For the Northern District of Georgia

# APPELLANTS' REPLY

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorney for the Appellants*

## Table of Contents


Table of Contents ........................................................................ 2

Table of Citations ......................................................................... 4

Argument ................................................................................... 7

I. The appellees' reliance on Regulation 189-8-.01 is misplaced. 7

A. The regulation doesn't apply to the Greens and Libertarians because they aren't "qualified to nominate candidates" under O.C.G.A. § 21-2-180. ........................... 8

B. Even if the regulation applied, the statute's "primary election" requirement independently bars political-body nominees from forming leadership committees. .............. 9

C. The regulation likely exceeds the Ethics Commission's rulemaking authority under the Georgia Constitution. 10

II. The Libertarian Party has nominated its candidate for Governor, and the appellees have nothing to say about it. ... 13

A. The nomination eliminates any possible doubt about the concreteness of the injury. ....................................... 14

B. The appellees' failure to address the Rule 28(j) letter is telling. ................................................................. 15

C. The Libertarian candidacy is a matter of public record. 16

D. The nomination resolves both the associational and organizational standing inquiries. ................................. 18

III. The appellees' ripeness argument has no merit. .................. 20

A. There is no exhaustion requirement for § 1983 claims.. 21

B. The ripeness requirement applies "loosely" in First Amendment cases. .......... 22

C. The appellees' reliance on *Digital Properties* is misplaced. .......... 24

IV. The appellees' traceability and redressability arguments have no merit. .......... 26

A. The political bodies' injuries are traceable to the defendants. .......... 26

B. The political bodies' injuries are easily redressed. ........ 29

Conclusion .......... 31

Certificate of Compliance .......... 33

## Table of Citations

### Cases

*ACLU v. Florida Bar*,
999 F.2d 1486 (11th Cir. 1993) .................................................. 28

*American Alliance for Equal Rights v. Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024) ..................... 20

*Beaulieu v. City of Alabaster*,
454 F.3d 1219 (11th Cir. 2006) ............................................ 21, 22

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........................................................................ 14

*Constitution Party of Pennsylvania v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ........................................................ 19

*Cowen v. Georgia Secretary of State*,
960 F.3d 1339 (11th Cir. 2020) ...................................................... 8

*Digital Properties, Inc. v. City of Plantation*,
121 F.3d 586 (11th Cir. 1997) .............................................. 21, 24

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) ...................................................... 20

*Graham v. Attorney General*,
110 F.4th 1239 (11th Cir. 2024) ................................................... 30

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ........................................................................ 19

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ........................................................................ 19

*Larson v. Valente*,
456 U.S. 228 (1982) ........................................................................ 31

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................... 27

*Maron v. Chief Financial Officer of Florida*,
136 F.4th 1322 (11th Cir. 2025)............................................ 22, 23

*Patsy v. Board of Regents*,
457 U.S. 496 (1982) ........................................................ 21, 22

*Republican National Committee v. Eternal Vigilance Action, Inc.*, 321 Ga. 771 (2025) ....................................................... 11, 12

*Sixth District of African Methodist Episcopal Church v. Kemp*,
574 F. Supp. 3d 1260 (N.D. Ga. 2021) ......................................... 27

*Universal Express, Inc. v. SEC*,
177 F. App'x 52, (11th Cir. 2006) ................................................ 17

**Statutes**

42 U.S.C. § 1983 ........................................................................ 21

O.C.G.A. § 21-2-150 ................................................................... 10

O.C.G.A. § 21-2-172 ........................................................ 10, 12, 25

O.C.G.A. § 21-2-180 .............................................................. 8, 12

O.C.G.A. § 21-2-2 ................................................................ 12, 25

O.C.G.A. § 21-5-34.2 ........................................................ 9, 11, 25

O.C.G.A. § 21-5-36 ...................................................................... 27

O.C.G.A. § 21-5-6 ........................................................................ 27

O.C.G.A. § 21-5-7 ........................................................................ 27

O.C.G.A. § 50-13-11 .................................................................... 21

## Other Authorities

Georgia Ethics Commission, Candidate Profile Search, https://peachfile.ethics.ga.gov/public/cf/candidateprofile ............ 17

Georgia Secretary of State, Qualifying Candidate Information, https://mvp.sos.ga.gov/s/qualifying-candidate-information ............ 17

## Rules

Fedederal Rule of Evididence 201 ............ 18

Federal Rule of Appellate Procedure 32 ............ 33

Ga. Comp. R. & Regs. 189-8-.01 ............ 7, 8, 9, 10, 12, 20

## Argument

### I. The appellees' reliance on Regulation 189-8-.01 is misplaced.

The centerpiece of the appellees' brief is a regulation adopted by the Ethics Commission in February 2024 that purports to redefine "political party" for purposes of the leadership committee statute. Appellees' Br. 10–11, 14–16. Because of this regulation, the appellees argue that political bodies have no injury because their nominees are already entitled to form leadership committees. *Id.* at 7, 14.

That argument fails for three independent reasons: (1) the regulation doesn't apply to the Greens or Libertarians; (2) even if it did, the statute's "primary election" requirement independently bars political-body nominees from forming leadership committees; and (3) the regulation likely exceeds the Ethics Commission's rulemaking authority under the Georgia Constitution.

### A. The regulation doesn't apply to the Greens and Libertarians because they aren't "qualified to nominate candidates" under O.C.G.A. § 21-2-180.

Regulation 189-8-.01 extends the definition of "political party" only to a political body that is "duly registered as provided in O.C.G.A. § 21-2-110 and qualified to nominate candidates for state-wide public office by convention pursuant to O.C.G.A. § 21-2-180." Ga. Comp. R. & Regs. 189-8-.01. But qualification under Section 21-2-180 isn't automatic. A political body may nominate candidates by convention only if it satisfies one of two conditions: (1) it files a petition with signatures equal to one percent of the registered voters who were eligible to vote in the preceding general election, or (2) it nominated a candidate in the preceding general election who received one percent of the total votes. O.C.G.A. § 21-2-180(1)–(2). As this Court explained in *Cowen v. Georgia Secretary of State,* 960 F.3d 1339, 1340–41 (11th Cir. 2020), qualification under Section 21-2-180 provides automatic ballot access for political-body candidates for statewide offices.

But neither the Green Party nor the Libertarian Party are qualified under Section 21-2-180. Neither of them has submitted a

qualifying petition, and neither of them had a candidate in the 2024 general election who received more than one percent of the total votes. The Green Party has never been qualified. The Libertarian Party was qualified when the Ethics Commission adopted the regulation in early 2024, but it lost that qualification after the 2024 election. As a result, Regulation 189-8-.01 doesn't apply to either plaintiff.

### B. Even if the regulation applied, the statute's "primary election" requirement independently bars political-body nominees from forming leadership committees.

Even if the Greens and Libertarians met the definition of "political party" in Regulation 189-8-.01, they still wouldn't be able to form leadership committees. That's because the statute limits leadership committee eligibility to nominees who are "selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a). The regulation does nothing to alter that requirement.

Political bodies don't hold primary elections. Their nominees are selected by convention, not by primary. *Compare* O.C.G.A. § 21-

2-150 *et seq*. (providing for party primaries) *with* O.C.G.A. § 21-2-172 (providing that political bodies nominate candidates by convention). The statute's "primary election" requirement thus operates as an independent statutory bar that the regulation can't override. Even the regulation itself acknowledges this distinction: it extends "political party" status only to bodies "qualified to nominate candidates . . . by convention." Ga. Comp. R. & Regs. 189-8-.01. But the statute requires selection by primary. A body that nominates by convention produces a nominee who was, by definition, not "selected in a primary election." The regulation can't change that fact without rewriting the statute.

The appellees don't address the statute's "primary election" requirement in their brief, and that silence is telling.

### C. The regulation likely exceeds the Ethics Commission's rulemaking authority under the Georgia Constitution.

Even if the regulation allowed Green and Libertarian nominees to form leadership committees, there are serious questions about whether the regulation is a valid exercise of the Ethics Commission's rulemaking authority under Georgia law.

In *Republican National Committee v. Eternal Vigilance Action, Inc.*, 321 Ga. 771 (2025), the Georgia Supreme Court unanimously reinvigorated the nondelegation doctrine under the Georgia Constitution and held that Georgia administrative agencies may "pass rules consistent with the existing statutory structure, . . . but [they] cannot go beyond, change, or contradict the statutory scheme." *Id.* at 804. The Court invalidated four of seven rules adopted by the State Election Board because they weren't authorized by the underlying statutes, even though the Board had broad rulemaking authority under the Election Code.

*Eternal Vigilance* is directly relevant here. The General Assembly created two mutually exclusive categories of political organizations—"political parties" and "political bodies"—and assigned each different rights and obligations throughout the Election Code. When it enacted the leadership committee statute, it authorized leadership committees only for nominees of "a political party" selected in "a primary election." O.C.G.A. § 21-5-34.2(a). It didn't extend that authorization to nominees of political bodies selected by convention, even though the General Assembly knew

that political bodies existed and nominated candidates through a different process. *See* O.C.G.A. §§ 21-2-2(23), 21-2-172, 21-2-180.

By redefining "political party" to include certain political bodies, Regulation 189-8-.01 doesn't merely fill a gap in the statutory scheme—it contradicts and expands the statutory text. The General Assembly drew a line between parties and bodies, and the Ethics Commission crossed it. Under *Eternal Vigilance*, that's precisely the kind of rulemaking that the Georgia Constitution forbids. An administrative agency cannot create rules that "go beyond, change, or contradict the statutory scheme." 321 Ga. at 804.

A regulation of doubtful validity doesn't eliminate the injury here. Instead, it confirms that the Greens and Libertarians are excluded from the leadership committee statute, and that's precisely what the legislature intended.

## II. The Libertarian Party has nominated its candidate for Governor, and the appellees have nothing to say about it.

The appellees devote the bulk of their standing argument to the contention that the plaintiffs' injuries are "conjectural" and "hypothetical" because they haven't identified, "by name or pseudonym, a single person who can give credence to these enumerated harms." Appellees' Br. 18. That argument has been legally questionable from the beginning of this case, but now it's obviously wrong.

On January 17, 2026, the Libertarian Party of Georgia nominated Chase Oliver as its candidate for Governor in the 2026 elections. The appellants advised this Court of that development three days later in a letter filed under Rule 28(j) of the Federal Rule of Appellate Procedure. The appellees' brief doesn't mention the Rule 28(j) letter, doesn't mention Chase Oliver, and doesn't acknowledge that the Libertarian Party has a gubernatorial candidate. That silence speaks volumes.

### A. The nomination eliminates any possible doubt about the concreteness of the injury.

The district court dismissed this case mostly because the political bodies had "not identified a Libertarian Party or Green Party candidate who actually is running for political office in 2026." (App. 28 at 23.)[1] That concern is now moot. Chase Oliver is the Libertarian Party's nominee for Governor. He is a real person running a real campaign. Under the leadership committee statute, the Democratic and Republican nominees for Governor will each be eligible to form a leadership committee and raise unlimited funds. Oliver will not. The competitive disadvantage that the political bodies alleged in their First Amended Complaint—that the statute "creates an unlevel playing field" for their nominees (App. 18 at 3)—is no longer hypothetical. It's happening now.

That's not the kind of speculative, "attenuated chain of possibilities" that concerned the Supreme Court in *Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013). Oliver has

---

[1] Citations to the Appendix take the form "App. Tab at Page."

been nominated. He has qualified as a candidate.[2] He is subject to the $8,400 contribution limit. His major-party opponents will have access to leadership committees. No chain of contingencies remains to be satisfied. The injury is concrete, particularized, and actual.

### B. The appellees' failure to address the Rule 28(j) letter is telling.

In their brief, the appellees argue at length that the plaintiffs "cannot identify a single person by name or even a pseudonym that can support the reality of these hypothetical harms." Appellees' Br. 8, 20. They assert that the plaintiffs "merely intend to nominate unnamed candidates in future elections who would create leadership committees if the law permitted them to do so." *Id.* They insist that the political bodies' alleged injuries "rely solely on hypotheticals and conjecture." *Id.* at 18.

Every one of those assertions is contradicted by the Rule 28(j) letter filed two months before the appellees' brief. (Appellants' Rule

---

[2] A list of qualified candidates is published on the Secretary of State's website, and it shows that Chase Oliver qualified on March 4, 2026. *See* https://mvp.sos.ga.gov/s/qualifying-candidate-information (last visited Mar. 28, 2026).

28(j) Letter, Dkt. 20.) The letter informed the Court and opposing counsel that the Libertarian Party had nominated its gubernatorial candidate and identified him by name. The letter explained that this development "significantly narrows the issues in this appeal" because the district court's core concern—the absence of a named candidate—had been resolved. *Id.* at 1.

The appellees chose not to respond to the Rule 28(j) letter, as was their right. But then they filed a brief that reads as though the letter doesn't exist, pressing factual claims that the letter refutes. The appellees cannot credibly argue that the political bodies' injuries depend on "theoretical people" and "hypothetical injuries," Appellees' Br. 23, when a named, nominated Libertarian candidate for Governor is actively campaigning. This Court should treat the appellees' silence on this point as a concession that the nomination undermines their standing argument.

### C. The Libertarian candidacy is a matter of public record.

The appellees' decision to ignore the Oliver nomination is particularly difficult to justify because the candidacy isn't just

mentioned in a Rule 28(j) letter—it's a matter of public record that's verifiable on the State's own websites.

Chase Oliver's candidacy appears on the Georgia Secretary of State's qualifying candidate information page, which lists all candidates who have qualified for the 2026 general election. *See* Georgia Secretary of State, Qualifying Candidate Information, https://mvp.sos.ga.gov/s/qualifying-candidate-information (last visited Mar. 28, 2026). It also appears on the Ethics Commission's own candidate profile database, which tracks campaign committee registrations and campaign finance disclosures. Georgia Ethics Commission, Candidate Profile Search, https://peachfile.ethics.ga.gov/public/cf/candidateprofile (last visited Mar. 28, 2026). The Ethics Commission—the chair of which is a named defendant-appellee in this case—thus has actual knowledge that the Libertarian Party has nominated a candidate for Governor who cannot form a leadership committee.

This Court may take judicial notice of those government records. *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (taking judicial notice of information on a

government agency's website); *see also* Fed. R. Evid. 201(b) (courts may take judicial notice of facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). The candidacy of Chase Oliver for Governor of Georgia is not subject to reasonable dispute.

### D. The nomination resolves both the associational and organizational standing inquiries.

The district court's standing analysis rested on two pillars, both of which are now undermined by the Oliver nomination.

First, the court held that the political bodies lacked *associational* standing because they had not identified any member—by name or pseudonym—who would be injured by the challenged statutes. (App. 28 at 22–23.) Chase Oliver is such a member. As the Libertarian Party's nominee for Governor, he will be directly and personally disadvantaged by the leadership committee statute's exclusion of political-body nominees. He has standing to sue in his own right, which is the touchstone for associational standing under *Hunt v. Washington State Apple*

*Advertising Commission*, 432 U.S. 333, 343 (1977). The interests at stake—equal treatment under Georgia's campaign finance laws—are germane to the Libertarian Party's purpose. And the claim asserted doesn't require Oliver's individual participation.

Second, the court held that the political bodies' failure to name a candidate was also "fatal to Plaintiffs' standing argument on behalf of itself as an organization." (App. 28 at 24 n.7.) But as the appellants argued in their opening brief, organizational standing doesn't require the identification of injured members at all; it requires only that the challenged conduct injures the organization itself. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The Libertarian Party alleged that the leadership committee statute injures its candidate-recruitment efforts (App. 18 at 3–4) and that injury is organizational in nature. *See Const. Party of Pa. v. Aichele,* 757 F.3d 347, 364–65 (3d Cir. 2014) (holding that a minor political party's impaired ability to recruit candidates is a cognizable organizational injury). In any event, Oliver's nomination independently confirms that the organizational injury is real: the Libertarian Party's nominee is now competing under the

very disadvantage that the Libertarian Party alleged would harm its recruitment.

The appellees' attempts to distinguish *Fearless Fund* and *Stincer* are beside the point. Appellees' Br. 22–23 (discussing *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 771-75 (11th Cir. 2024) and *Doe v. Stincer,* 175 F.3d 879, 884 (11th Cir. 1999)). Even if those cases required more than the plaintiffs initially alleged—a proposition that the Greens and Libertarians contest—the Oliver nomination provides it. A named Libertarian nominee for Governor has been identified. He will be harmed by the challenged statute.

## III. The appellees' ripeness argument has no merit.

The appellees argue that the political bodies' claims aren't ripe because they "raced to court seeking a declaratory judgment without ever attempting to obtain a 'conclusive response'" from the Ethics Commission about whether Regulation 189-8-.01 entitles their nominees to leadership committees. Appellees' Br. 10 (quoting *Digit. Props., Inc. v. City of Plantation,* 121 F.3d 586, 590 (11th Cir.

1997)). This argument is an exhaustion requirement dressed in ripeness clothing, and it fails under both doctrines.

**A. There is no exhaustion requirement for § 1983 claims.**

The Supreme Court settled four decades ago that plaintiffs bringing claims under 42 U.S.C. § 1983 are not required to exhaust state administrative remedies before suing in federal court. *Patsy v. Bd. of Regents,* 457 U.S. 496, 516 (1982). This rule is categorical: "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id.* The Eleventh Circuit has consistently followed *Patsy*. *See Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226–27 (11th Cir. 2006) (citing *Patsy* for the proposition that "there is no requirement that a plaintiff exhaust his administrative remedies before filing suit under § 1983").

The appellees' argument is that the political bodies should have petitioned the Ethics Commission for a declaratory ruling under the Georgia Administrative Procedure Act, O.C.G.A. § 50-13-11, before bringing a federal constitutional challenge. Appellees' Br.

10. That's precisely the kind of state-administrative-exhaustion requirement that *Patsy* forbids. The appellees can't relabel an exhaustion argument as a ripeness argument and thereby evade the Supreme Court's holding. *See Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1332 (11th Cir. 2025) (analyzing ripeness based on the fitness of the issues and hardship to the parties—not on whether the plaintiff first sought an administrative ruling).

**B. The ripeness requirement applies "loosely" in First Amendment cases.**

The appellees acknowledge that in First Amendment cases, the ripeness requirement "applies 'loosely.'" Appellees' Br. 9 (quoting *Beaulieu*, 454 F.3d at 1228). But the appellees' application of the doctrine bears no resemblance to how the Eleventh Circuit applies it in First Amendment campaign-finance cases.

In *Beaulieu*, this Court explained that the ripeness inquiry has two components: fitness for judicial decision and hardship to the parties. 454 F.3d at 1228. Both components favor the Greens and Libertarians here.

As to fitness, the constitutional questions in this case are purely legal. Does the leadership committee statute violate the First and Fourteenth Amendments by excluding political-body nominees from the leadership committee regime? Does it violate the Equal Protection Clause by treating nominees of political parties differently from nominees of political bodies? Those questions don't depend on any undeveloped facts. The statutory text is fixed. The regulatory text is fixed. The distinction between parties and bodies is a matter of law. No further factual development—and certainly no administrative proceeding before the Ethics Commission—would sharpen the issues or alter the legal analysis. This is the paradigm of a case that is fit for judicial resolution. *See Maron*, 136 F.4th at 1332 (finding fitness satisfied where the legal question did not depend on further factual development).

As to hardship, the political bodies are suffering ongoing competitive injury with every election cycle that passes. The 2026 election is already underway. The Libertarian Party has nominated Chase Oliver for Governor. He is campaigning now under a regime

that allows his major-party opponents to form leadership committees while he cannot. Delaying resolution of this case to require an administrative proceeding before the Ethics Commission would prolong that injury through yet another election cycle. *See id.* (finding hardship where "the longer judicial review is delayed, the longer the [plaintiffs suffer the challenged deprivation]").

### C. The appellees' reliance on *Digital Properties* is misplaced.

The appellees' ripeness argument rests almost entirely on *Digital Properties*, 121 F.3d at 590, and its requirement that a plaintiff obtain "a conclusive response from someone with the knowledge and authority to speak" for the government before filing suit. Appellees' Br. 10. But *Digital Properties* involved a land-use dispute in which the plaintiff sought to build a nightclub and, after speaking with a single low-level city employee, filed suit claiming the zoning ordinance prohibited its plans—without ever applying for a permit or speaking with anyone in a supervisory role. 121 F.3d at 588–90. The Eleventh Circuit held that the case wasn't ripe

because the plaintiff had never actually tested whether the ordinance would be applied to prohibit its proposed use.

This case is nothing like *Digital Properties*. The Greens and Libertarians aren't asking whether a regulation of uncertain scope will be applied to prohibit some specific proposed activity. They're challenging a statute whose text unambiguously excludes their nominees from the leadership committee regime. The statute limits leadership committees to nominees of "a political party" who are "selected in a primary election." O.C.G.A. § 21-5-34.2(a). Political bodies are, by statutory definition, not political parties. O.C.G.A. § 21-2-2(23). Their nominees are selected by convention, not by primary. O.C.G.A. § 21-2-172. No "conclusive response" from the Ethics Commission is needed to tell the political bodies what the statute says on its face.

An administrative proceeding would accomplish nothing except delay.

## IV. The appellees' traceability and redressability arguments have no merit.

The appellees devote barely two pages to traceability and redressability. Appellees' Br. 24–25. That brevity is understandable—the defendants didn't dispute redressability in the district court, and the court didn't address it in its order. Appellants' Br. 27, 39. The appellees' belated effort to make these arguments on appeal adds nothing of substance.

### A. The political bodies' injuries are traceable to the defendants.

The appellees argue that the Greens and Libertarians "do not explain why the Attorney General or the Commission would enforce statutes applicable to political candidates against either the Green Party or Libertarian Party." Appellees' Br. 24. This argument misunderstands the nature of the injury and who the relevant defendants are.

The plaintiffs' injury isn't that the defendants will enforce the campaign-finance statutes *against the parties themselves*. It's that the defendants enforce a statutory scheme that treats political-body

nominees differently from political-party nominees. The Attorney General enforces the Campaign Finance Act through civil penalties and injunctive relief. O.C.G.A. § 21-5-6(b)(14). The Ethics Commission administers the Act, registers leadership committees, and oversees campaign finance compliance. O.C.G.A. §§ 21-5-6, -7, -36. These are the state officials responsible for the regulatory framework that creates the competitive disparity the political bodies challenge.

That's all that traceability requires. A plaintiff challenging an allegedly unconstitutional statute need not show that the defendant has initiated or threatened enforcement proceedings against the plaintiff specifically. The plaintiff need only show that the injury is "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). When a plaintiff challenges a statute and sues the officials who enforce it, traceability is satisfied. *See, e.g., Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1272 (N.D. Ga. 2021) (finding traceability in a pre-enforcement

challenge to Georgia election law where defendants were state officials with enforcement authority).

The Libertarian Party is injured by the unequal statutory scheme because it disadvantages the Party's nominees and donors, impairs the Party's recruitment efforts, and forces the Party to compete on an unlevel playing field. That injury is traceable to the officials who administer and enforce the statutory scheme. It doesn't matter that the enforcement mechanisms operate against candidates and donors rather than against the Party directly; the Party's injury flows from the scheme those officials maintain.

The appellees' argument that traceability fails because the political bodies have not alleged "actual, imminent threats of enforcement" against their members, Appellees' Br. 24, was addressed in the appellants' opening brief. Appellants' Br. 35–38. The standard for pre-enforcement challenges to campaign-finance laws is not whether there is an actual threat of prosecution but whether the plaintiff has a reasonable fear of enforcement. *See ACLU v. Fla. Bar,* 999 F.2d 1486, 1492–93 (11th Cir. 1993). The plaintiffs alleged that the defendants vigorously enforce Georgia's

campaign-finance laws (App. 18 at 8–9) and the defendants have given no assurance that they wouldn't enforce the contribution limits against a Libertarian or Green candidate who exceeded them. That's enough.

### B. The political bodies' injuries are easily redressed.

The appellees' redressability argument is remarkably thin. They argue, in a single paragraph, that "the Court cannot craft an injunction because there are no specific facts alleged on which it may base relief" and that "it is impossible for a favorable decision to redress the political bodies' injuries when they have yet to allege facts showing an injury." Appellees' Br. 25. This isn't a redressability argument at all—it's simply a restatement of the appellees' injury-in-fact argument, which fails for the reasons already explained.

When the focus is on actual redressability—whether a favorable decision would remedy the injury—the answer is straightforward. As the appellants explained in their opening brief, and as this Court's panel discussed extensively at oral argument in

*Graham v. Attorney General*, 110 F.4th 1239 (11th Cir. 2024), several forms of injunctive relief would redress the political bodies' injuries. Appellants' Br. 38–39.

First, the Court could enjoin the defendants from enforcing the leadership committee statute in its entirety, which would "level down" the contribution limits by eliminating the leadership committee advantage for all candidates. Second, the Court could require the defendants to accept and process leadership committee registration forms submitted by political-body nominees, which would "level up" by extending the leadership committee privilege to Libertarian and Green nominees. Third, the Court could enjoin the defendants from enforcing the contribution limits in Sections 21-5-41 against political-body nominees for Governor and Lieutenant Governor, which would also level up by freeing those nominees from the caps that their major-party counterparts can circumvent through leadership committees.

Any of those remedies—each of which operates against the named defendants—would redress the competitive disparity the political bodies allege. That's all Article III requires. *See Larson v.*

*Valente*, 456 U.S. 228, 243 n.15 (1982) (holding that a state's selective enforcement of a statute against certain religious groups was redressable by an injunction against enforcement).

## Conclusion

The appellees' arguments rest on a regulation that doesn't apply to these plaintiffs, a standing theory that ignores the Libertarian Party's actual gubernatorial nominee, a ripeness doctrine that doesn't apply to § 1983 claims, and redressability arguments that the defendants didn't even raise below. None of those arguments justifies the district court's dismissal of this case. The Court should reverse the district court's judgment and remand for further proceedings.

Dated: March 30, 2026

Respectfully submitted,

**/s/ Bryan L. Sells**
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of
Bryan L. Sells, LLC.
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorney for the Appellants*

## Certificate of Compliance

This document complies with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure because, excluding parts of the document exempted by Rule 32(f), it contains 4,000 words. This document also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac.

**/s/ Bryan L. Sells**
Attorney for the Appellants
March 30, 2026